We have one more case. Judge Gates is standing occasionally because she has a back issue, so don't feel offended. People of the State of Illinois v. James Jamison We have Richard Whitney and we have Whitney A. In Silvermint v. United States, the U.S. Supreme Court held that at the very core of the Fourth Amendment, it stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion. On this appeal, we are asking this Court to do nothing more or less than uphold settled precedent and protect the sanctity, refuge, and individual privacy of the home. As the U.S. Supreme Court pointed out in Kentucky v. King, a peace officer, like any other citizen, has a right to walk up to the door of a person's home, knock on it, and ask to speak to anyone who is inside. However, in the absence of a warrant, there is no corresponding obligation of the person inside to answer, open the door, or perform any other act requested by the officer, any more than a resident has an obligation to answer such a request by you or me or anyone else. Yet in this case, Defendant Appellant James Jamison, his mere passive refusal to open the door for a peace officer who did not have a warrant, somehow became the ground for convicting him of obstructing a peace officer. We have demonstrated in this case that as a matter of well-settled Fourth Amendment law, including Kentucky v. King, this conviction cannot stand. In fact, it never should even have gone to trial since the information on its face did not even charge an offense. But even if we assume arguenda that it did, the evidence at trial did not prove that an offense had been committed. We have also demonstrated on this appeal that the conviction cannot stand for an additional reason, that the court below failed to comply with Supreme Court Rule 401B, which absolutely requires having the proceedings reported and transcribed whenever a defendant like Mr. Jamison makes the very risky decision to waive his right to counsel and represent himself. And this case incidentally illustrates why strict compliance with that rule is essential. We also raise some issues of ineffective assistance of counsel and some relatively minor improprieties that occur in sentencing. But we urge this Court to decide this case in the more vital Fourth Amendment issues and values that are at stake and enter a judgment of acquittal for Mr. Jamison, upholding the principle in settled case law that mere passive refusal to open the door of one's home cannot possibly constitute obstruction of a peace officer who doesn't have a warrant. Even when there's been a 911 call saying that there's a baby and a mother who's at risk and the boyfriend was cutting things up?  You don't expect it provides any probable cause or exigent circumstances? Well, Your Honor, it's our position it does not. But perhaps more controlling in this case is the fact that that argument was never raised by the State in the court below. The jury was never instructed on any probable cause but exigent circumstances. And one of the State's own key witnesses, Sergeant Kemp, admitted that at the time we didn't have exigent circumstances. That's why we went without a warrant. I wondered about that, but isn't the standard objective rather than subjective? It would be, but I would suggest that that's rather powerful. From the officers on the scene, the State's own witness. A 911 call is pretty powerful, though, when you have somebody screaming in the background and that there may be a baby and a woman in harm's way. Well, but that's a pretty big maybe. It's a call coming from Florida from a mother-in-law who's basically providing third-hand information to dispatch. And babies scream and cry for any number of reasons. That in and of itself doesn't rise to the level of probable cause to believe that a crime has been committed. And as a matter of fact, there was no argument made by the State in the court below that they believed that the crime had been committed. The argument that was made was that they were investigating to find out whether there was a problem. So it never rose to the level of probable cause. The State never made that argument in the court below. What about the more recent cases that talk about impeding or interfering or obstructing can also be construed as failure to take action or omission to take action? And I'm talking about the cases cited by the State of Synod and Ostrowski? Yes, exactly, Your Honor. The Synod case is really the case that I would argue would be very difficult to reconcile with the other case law we cite, the Hildenburg-LaCroix case and so on. Although there was a subsequent second district case that said that, well, even in Synod, there was a physical act because the motorist who was being stopped, this was a traffic stop case, was hanging onto the wheels, so there was a physical act. Leaving that aside, even under Synod, there's a problem. Number one, first we have to distinguish between what happens in a motor vehicle and what happens in a home. For a number of reasons that I cited in our reply brief, expectations of privacy are much less in a motor vehicle than in the sanctity of one's home, and there's a lot of case law on that. Driving is a privilege. It's not a right. It doesn't apply in a home. In a motor vehicle, there's a danger that the person could get away and not be found. It doesn't exist in the home. There's any number of differences. But secondly, let's suppose for the moment that Synod was decided correctly and somehow overruled all of this case law that said there has to be a physical act. Even if we give that much credence to the decision of the second district, even an inaction still has to obstruct or impede in some way. My client's inaction did not, if we assume for the sake of argument that Officer Han had an authorized act, he had a right because, you know, in the abstract, he had a right to enter the home even though he never did. There was nothing that my client did that obstructed him from doing that. He didn't hold the door. He didn't lock the door. It may have been already locked, but there was absolutely zero evidence of any act or inaction that impeded Officer Han from entering the building. Or maybe he went and said she didn't want to come to the door. But wasn't there some evidence to support that, that the officer just wanted to see the alleged victim? Well, that is what the request was. And what Mr. Jamieson said repeatedly is she's not coming to the door. Not I'm not letting her come to the door. Not I'm preventing her from coming to the door. Not anything like that. Just she's not coming to the door. And, in fact, the putative victim here never testified at trial, which we drove with inferences one May from that. I'm sorry. I'm sorry. I found that quite unusual. But she didn't testify. Well, I did as well. I mean, even the officers testified that after they got the warrant and they did break into the home, that she was unharmed. She was in the back room. There was no testimony about her saying anything. There was nothing. There was nothing with respect to this. But to go back to Justice Schwartz's question, there was there was nothing there to indicate once the officers got there that there was anything out of your. They didn't hear a shout scream. They didn't hear a woman complain. All they heard was Mr. Jamieson saying she's not coming out. In so many words, repeated several times. So what the case law is very clear about, though, and, in fact, I alluded to it earlier in speaking in Kentucky v. King, and this is a U.S. Supreme Court case only three years old, there is no affirmative duty when an officer knocks on the door, absent a warrant, to perform any affirmative act. This is still the law of the land. This is still controlling. Mr. Jamieson was not required to go get Chelsea Berg and bring her to the door simply because an officer was investigating some sort of disturbance. Thank you. You have the opportunity for resettlement, Mr. Whitney. Ms. Adkins? May it please the court. Richard, my name is Whitney Adkins for the state of Illinois. As the court can see from the state's answer brief, we take the position that the identification of Officer Streep in the information was merely surplusage to the information and was not an element of the offense, and that there was evidence at trial from which the jury could find that the defendant was guilty of obstruction of a peace officer. However, even if this court does not find that the identification of Officer Streep in the information was merely surplusage, the conviction can still stand because Officer Streep had authority to enter the defendant's residence under the Community Caretakers Act and exigent circumstances. Excuse me, but the way this criminal conduct was charged, the charge, as I understand it, was simply that the defendant failed to open the door so officers could speak with Chelsea. Is that your understanding? I mean, because I'm concerned that if we start convicting people for failing to open a door, if that's how this is charged, it seems like we're opening a very wide trough for charging and convicting people. Well, I think that the information was a little bit more detailed than that. I believe it used the words investigation of a domestic dispute. I can go get the language if that would be helpful. Do you have it with you? Yeah. So knowingly obstructed the performance of Zach Streep of an authorized act within his official capacity, being the investigation of a domestic disturbance, knowing Zach Streep to be a peace officer engaged in the investigation of his official duties, and that he ignored the officer's commands to open the door and then the address so that they could speak with the reported victim, Chelsea Burr. So the real key that you're hanging your hook on seems to be the domestic violence in the charge. I mean, there are no other facts really that talk about exigent circumstances, right? Well, yes. Within the testimony of the police officers and the lack of cooperation of the defendant, this went on for 45 minutes. They announced themselves, explained to the defendant why they were there. He was completely uncooperative, very curt with them, gave them nothing to sort of assure them that everybody was okay. The jury makes its decision based upon the charging document and the instructions. So all of this evidence that was heard would not have been part of the jury instruction. It would have been something like he was investigating a domestic violence and didn't open the door. Is that right or wrong? Well, I think I'm a little bit confused by it. Are you saying that when we look at this and decide whether he was rightfully or wrongfully convicted, we have to look at what he was charged with, right? Right. And the evidence seems to go beyond what he was charged with. I mean, you talked about what all was going on. But the charge says that he was in the performance of an investigation of a domestic violence dispute. Okay. And that he wouldn't open the door. Okay. Okay, I see. So you're saying that the premise that he was acting under exigent circumstances is beyond investigating a domestic dispute. It seems to me that it is. Okay. Because the way it was charged. Right. Okay. Well, my response would be that even if it is, it certainly isn't beyond community caretaking act. And he certainly had authority under the community caretaking act. I keep calling it an act. It's an exception. The community caretaking exception. He certainly had authority under that, if not the exigent circumstances. And in addition to that, let's not forget, they did have a warrant. The defendant would like to forget that they had a warrant. Or ignore that, I should say. But they had a warrant. So you're saying that the obstruction could be later in time when he had a warrant and wouldn't open the door. Yes, one could find that. Yes. Okay. And that's based on the fact that they had to then break down the door with the ramming post or whatever. Yeah, some sort of a ramming shield. It's based upon that fact. And it's also based upon the fact that it's not like they sort of stealthily just came to the door and rammed it. I mean, they announced they had a warrant. So they told him, we've got a warrant. Open up. And it was at that point. So, yeah, it would be based upon the warrant and the announcement of the warrant. And his subsequent refusal to still deny the request, even upon knowing that they had a warrant. Counsel, let me ask you about this 401B requirement. There was not compliance with that. And we've got cases cited to us out of the 4th District and the 2nd District that it takes strict compliance. Substantial compliance is not adequate. I think you cited the Durflinger case. You still think that 1976 case is good law? Well, I think the state is willing to concede that it may not be the best law today. But I don't think that the trial court's failure to strictly comply with 401B warrants reversal of the defendant's conviction in this case. Because the defendant has not and cannot prove that noncompliance with Rule 401B prejudiced him or unfairly set him up for subsequent proceedings. Because he doesn't claim that his waiver of counsel was un-involuntary or unknowing or somehow else ineffective. And I know that the defendant has cited a case that noncompliance with Rule 401B automatically requires reversal of the conviction. But the state submits that this court should decline to follow because the purpose of Rule 401B is so that contentions of ineffective waiver can be disposed of through an adequate record. And he's not contending that his waiver of counsel was ineffective. But you do agree that if we were to so rule as you asked that it would be different from what the fourth and the second half ruled on strict compliance? I think it would only be different from one district. Because he only cited a case from one district that strict compliance automatically requires reversal. Well, with all these questions, it kind of went over a lot of my points. But a few of the other points that I would like to make is that the defendant underscores the fact that the jury was specifically instructed. Go ahead and finish that thought. I just want to say that the officers were acting in concert for this endeavor. They had collective authority. And so who was named in the information really doesn't matter. And for these reasons, we ask that the court affirm the conviction below. Thank you. Okay. Thank you, Ms. Atkins. Do you have a rebuttal, Mr. Whitney? Yes, thank you, Your Honor. First, addressing the point that Justice Schwarm was asking about, we don't even have to go to other circuits. We have a fifth district case, black, people be black for 2011, I'm excited too. Strict compliance is clearly the rule. And opposing counsel said, well, we didn't show prejudice. There is no need to show prejudice under the Herring case. People be Herring out of the second district. The right of counsel is so fundamental that we will review as plain error a claim that there was no effective waiver of counsel, although the issue was not raised in the trial court. There's no need to show prejudice here. With respect to Justice Kaye's concerns, obviously we share them. The charging information here charged Mr. Jameson with ignoring the officer's commands to open the door. We should all be very troubled by that. He had a right to ignore the officer's commands to open the door in the absence of a warrant. There is no affirmative duty. That was the rule in the King case. That was the rule in Hilgenberg, Cope, and the Illinois Supreme Court case of Peabody-Weddington. Mere refusal to answer a police officer in the absence of a physical act may be deemed an amount of argument, which is not a violation of the statute in question. And what about after the warrant? He was not, the jury was not instructed about what happened after the warrant. The jury was specifically instructed that the state had to prove that Mr. Jameson knowingly resisted or obstructed the performance by Zach Street of an authorized act within his official capacity. Zach Street was not the one who served the warrant. This happened before the warrant. That's what the jury was instructed on. That's what the charging document said. That's what the state's closing argument was all about, was that he obstructed Zach Street, not Sergeant Kemp, not the special response team, after they had the warrant. So he was never charged. Jury was never instructed. Jury was never instructed about the community caretaking exception. They were never instructed about the exigent circumstances exception. They were never instructed about the emergency exception. This was very straightforward, but what they also were instructed about was the Fourth Amendment, apparently. And this is a real problem here because, again, as a matter of law, a peace officer simply knocking on a door and saying, I want to talk to you, or I want to talk to someone else in the building, does not create some affirmative duty of the person inside to do anything, absent a warrant. And yet, that was the obstruction that Mr. Jamieson was convicted of. Accordingly, for these reasons, and basically just following a very clear case law, we have an omission, not a co-omission. That is not enough to convict someone of obstructing a peace officer. Thank you, Your Honor. Thank you. Thank you both for your briefs and arguments. We'll take them at our own risk.